1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                      AT TACOMA

10

11   In re                                    CASE NO. 15-5892 RJB

12   VENTURE FINANCIAL GROUP, INC.,                    13-46392 BDL

13                  Debtor.                   ADVERSARY P. 14-04194 BDL
     _____
14   MARK D. WALDRON, chapter 7 trustee
     for Venture Financial Group, Inc.,       ORDER ON FDIC'S MOTION FOR
15                                            LEAVE TO APPEAL
                   Plaintiff,
16
            v.
17
     FEDERAL DEPOSIT INSURANCE
18   CORPORATION, in its capacity as
     Receiver of Venture Bank,
19
                   Defendant.
20
            This matter comes before the Court on the Federal Deposit Insurance Corporation's
21
     ("FDIC") Motion for Leave to Appeal the Bankruptcy Court's November 5, 2015 Order on
22
     Motions for Summary Judgment (*Waldron v. FDIC,* United States Bankruptcy Court for the
23
     Western District of Washington Adversary Proceeding No. 14-04194 BDL, Dkt. 80) pursuant to
24

1    28 U.S.C. § 158(a)(3).  The Court has considered the pleadings filed regarding the motion, and
2    the remaining record.

3           The principal question in the case in which the order at issue was entered - *Waldron v.*
4    *FDIC,* United States Bankruptcy Court for the Western District of Washington Adversary
5    Proceeding No. 14-04194 BDL ("the adversary proceeding") - is whether the FDIC-Receiver, as
6    receiver for Venture Bank ("Bank") or the bankruptcy trustee ("Trustee") for the bank's holding
7    company Venture Financial Group, Inc. ("Holding Company") is entitled to $8,471,982.36 in
8    federal income tax refunds.  Dkt. 1.  The FDIC-Receiver contends that the Bankruptcy Court
9    improperly denied its motion for summary judgment in the adversary proceeding and that leave
10   for an immediate appeal of that order should be granted.  For the reasons stated below, the
11   motion should be denied.

12                              I.    **FACTS**

13      According to the FDIC, Venture Bank was closed by the Washington Department of
14   Financial Institutions on September 11, 2009, and the FDIC was appointed its Receiver.  The
15   Holding Company filed chapter 7 bankruptcy on October 10, 2013.  *In re Venture Financial*
16   *Group, Inc.*, United States Bankruptcy Court for the Western District of Washington Case No.
17   13-46392 BDL.
18   The FDIC states that:

19           As the duly authorized alternative agent for the consolidated group including the
             Bank and the Holding Company, the FDIC-Receiver filed all of the tax returns
20           requesting the Tax Refunds. The IRS paid $6,204,763.10 of the Tax Refunds to
             the FDIC-Receiver before the bankruptcy was filed and paid the remaining
21           $2,267,219.26 to the FDIC-Receiver after the bankruptcy was filed.  All parties
             agree that the tax refunds are solely attributable to losscarrybacks claims filed by
22           the FDIC-Receiver on behalf of the failed Venture Bank.

23           The Trustee brought an adversary proceeding asserting four claims against the

24

1      FDIC-Receiver: (1) avoidance of a preferential transfer under 11 U.S.C. § 547,
seeking to recover the $6,204,763.10 portion of the Tax Refunds received by the
2      FDIC-Receiver before the bankruptcy, (2) objection to the FDIC-Receiver's proof
of claim under 11 U.S.C. § 502, asserting that the bankruptcy estate owned the
3      Tax Refunds and that the FDIC-Receiver was, at most, entitled to an unsecured
claim, (3) declaratory judgment under 11 U.S.C. § 105 and 28 U.S.C. §§ 2201 and
4      2202 concerning ownership of the Tax Refunds, and (4) turnover of all Tax
Refunds, whether pending or received, under 11 U.S.C. § 542. The Trustee later
5      abandoned the claim for declaratory judgment, leaving the remaining three claims
at issue.

6   Dkt. 1.

7           Parties engaged in discovery in the adversary proceeding and filed cross motions for

8   summary judgment. *Waldron v. FDIC,* United States Bankruptcy Court for the Western District

9   of Washington Adversary Proceeding No. 14-04194 BDL, Dkts. 51 and 61.  The Bankruptcy

10  Court denied both motions, providing in relevant part:

11

12      Venture Bank and Venture Wealth Management, Inc. are both wholly-owned
subsidiaries of VFG (collectively, the "Consolidated Group"). In the past, VFG,
13      as the parent corporation, served as sole agent for the Consolidated Group for tax
purposes, pursuant to 26 C.F.R. § 1.1502-77. In 2009, Venture Bank was closed
14      and placed into federal receivership, with FDIC-R appointed as receiver. In 2011,
FDIC-R made a request to the Internal Revenue Service (the "IRS") to serve as
15      alternative agent to file tax returns for the Consolidated Group, pursuant to 26
C.F.R. § 301.6402-7, which was approved despite VFG's objection. Between
16      2011 and 2013, FDIC-R filed amended tax returns as alternative agent for the
Consolidated Group, requesting refunds for years 2004 through 2007. VFG filed
17      its voluntary chapter 7 petition on October 10, 2013.

18      This dispute concerns ownership rights to tax refunds received by FDIC-R, as
alternative agent for the Consolidated Group, in the amounts of $6,204,763.10 pre-
19      petition and $2,267,219.26 post-petition (the "Tax Refunds"). . .

20      "In the context of tax refunds attributable to a subsidiary (but held by a parent as a
result of a decision to file consolidated tax returns)… 'the parties are free to adjust
21      among themselves the ultimate tax liability.'" *In re Indymac Bancorp, Inc*., 554 F.
App'x 668, 669 (9th Cir. 2014) (*quoting W. Dealer Mgmt. v. England* (*In re Bob
22      Richards Chrysler–Plymouth Corp*.), 473 F.2d 262, 264 (9th Cir. 1973) ("*Bob
Richards*")). Under *Bob Richards*, "where the parties have made no agreement
23      concerning the ultimate disposition of the tax refund, the parent holds the tax
refunds in trust for the subsidiary." *Id*. (internal quotations omitted). Therefore,
24      the threshold issue for determining ownership of the Tax Refunds is whether there
is an agreement concerning the ultimate disposition of the Tax Refunds, which

"may be done through an explicit agreement, or an agreement implied by the parties' past practices." *Id.* (*citing Bob Richards*, 473 F.2d at 264 & n. 4) (*internal quotations omitted*).

*Waldron v. FDIC,* United States Bankruptcy Court for the Western District of Washington Adversary Proceeding No. 14-04194 BDL, Dkt. 80, at 3-4. The Bankruptcy Court then held that:

> The parties' positions on the threshold issue continue to evolve, but suffice to say there are disputes regarding whether the tax allocation agreement of VFG's predecessor-in-interest is still in effect, whether that agreement was abandoned, whether that agreement was supplanted by a more recent written agreement which cannot be located, whether there was an agreement which may be implied by the parties past practices, and what the terms of the alleged written or implied agreement are. There are genuine issues of material facts which prevent the Court from resolving this issue on summary judgment.

*Waldron v. FDIC,* United States Bankruptcy Court for the Western District of Washington Adversary Proceeding No. 14-04194 BDL, Dkt. 80, at 4.

The FDIC now moves for leave to file an immediate appeal of this order, and intends to address the following legal issues on appeal:

1. Where the Trustee failed to adduce evidence of a binding applicable tax sharing agreement, concedes that the Holding Company had no basis to claim an ownership interest in the Tax Refunds, and claims, instead, that 11 U.S.C. § 541(a) gives the Trustee greater property rights than the Holding Company had before bankruptcy, did the Bankruptcy Court err when it refused to grant summary judgment for the FDIC-Receiver on ownership of the Tax Refunds and the related turnover and preference claims?

2. Where payment on an antecedent debt is a required element of a preference claim, and there was no evidence in the record that the Holding Company owed the Bank an antecedent debt in the 90 days before bankruptcy, did the Bankruptcy Court err when it refused to grant summary judgment on the preference claim to the FDIC-Receiver?

Dkt. 1.

/

/

## II.   **<u>DISCUSSION</u>**

### **MOTION UNDER 28 U.S.C. § 158(a)(3)**

Under 28 U.S.C. 158(a)(3), with leave of court, district courts have jurisdiction to hear appeals of interlocutory orders and decrees of bankruptcy judges.  "In determining whether to grant leave to appeal an interlocutory order from the bankruptcy court, the court will apply the standard set forth in 28 U.S.C. § 1292(b), which is the standard used by the court of appeals to determine whether to entertain interlocutory appeals from the district court."  *See In re Futter Lumber Corp.*, 473 B.R. 20, 26 (E.D.N.Y. 2012); *In re Belli*, 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001)( in evaluating a § 158(a)(3) motion, "[w]e look for guidance to standards developed under 28 U.S.C. § 1292(b) to determine if leave to appeal should be granted, even though the procedure is somewhat different").  A court of appeals has discretion to consider an interlocutory appeals from a district court when a district judge certifies that the order at issue "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Applying that standard here, the motion for leave to appeal should be denied.  There has been no showing that the decision at issue involved a "controlling question of law as to which there is a substantial ground for difference of opinion."  The Bankruptcy Court held that there are issues of fact which precluded summary judgment.  "A factual determination by the Bankruptcy Court is accorded deferential review by this Court and is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b)."  *In re Futter,* at 27.  Even if it could be argued that the Bankruptcy Court's determination regarding the whether there was a tax allocation agreement in effect is a "controlling question of law," it is a fact based inquiry.

1  "[W]here a legal issue is essentially fact based in nature, interlocutory appeal is not appropriate."

2  *In re Futter,* at 27-28 (*internal quotations omitted*).  Moreover, there is no showing that there is

3  substantial ground for difference of opinion.  Further, there is no showing that an immediate

4  appeal may "materially advance the ultimate termination of the litigation."  The FDIC's Motion

5  (Dkt. 1) should be denied.

6                              III.    **ORDER**

7          The Federal Deposit Insurance Corporation's Motion for Leave to Appeal the Bankruptcy

8  Court's November 5, 2015 Order on Motions for Summary Judgment (Adversary Proceeding

9  No. 14-04194, Dkt. 80) pursuant to 28 U.S.C. § 158(a)(3) (Dkt. 1) **IS DENIED**.

10         The Clerk is directed to send uncertified copies of this Order to all counsel of record and

11  to any party appearing *pro se* at said party's last known address.

12         Dated this 16th day of December, 2015.

13

14

15         ROBERT J. BRYAN
           United States District Judge

16

17

18

19

20

21

22

23

24

ORDER ON FDIC'S MOTION FOR LEAVE TO
APPEAL- 6